## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **ADELYN M. BARGERON,** )<br><br>  **Plaintiff,** )<br><br>  **v.** )<br><br>**LAW SCHOOL ADMISSION COUNCIL,**<br>**INC.,** )<br><br>  **Defendant.** ) | **Civil Action No. 5:13-cv-00425-MIT** |

## LSAC'S MEMORANDUM ON THE ANNOTATION
## OF SCORES EARNED WITH EXTRA-TIME ACCOMMODATIONS

In accordance with the Court's request of December 11, 2013, defendant Law School Admission Council ("LSAC") provides the following legal authorities relevant to LSAC's policy of annotating Law School Admission Test ("LSAT") scores earned with extra testing time (referred to by plaintiff as "flagging"). LSAC annotates such scores because research shows that LSAT scores earned with extra time accommodations are not comparable to scores earned under standard test conditions.

## BACKGROUND

As this is the first court filing in which LSAC discusses its policy of annotating test scores achieved with extra testing time, LSAC will provide a brief explanation for the policy.

In accordance with the ADA,[1] LSAC provides accommodations to individuals with documented disabilities. Individuals request testing accommodations based upon a range of

---

[1] The ADA requires testing entities to offer their examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements . . . ." 42 U.S.C. § 12189.

claimed physical and mental impairments. The vast majority of requests, however, are based on learning disability and/or attention deficit/ADHD diagnoses.

Additional testing time is the most commonly requested accommodation. Extra testing time, however, can affect the resulting scores. Multiple psychometric studies have shown that LSAT scores earned with extra testing time are not comparable to LSAT scores earned under standard time conditions and tend to over-predict how examinees will perform in their first year of law school. *See, e.g.,* Amodeo *et al*., Predictive Validity of Accommodated LSAT Scores for the 2002-2006 Entering Law School Classes, March 2009 (LSAT Technical Report 09-01), *available at* http://lsac.org/docs/default-source/research-(lsac-resources)/tr-09-01.pdf.

In the interest of providing relevant information regarding the LSAT scores that it reports, LSAC provides a letter to schools when they receive a score report for an individual who tested with extra time. The letter explains that: the applicant tested under nonstandard time conditions; research indicates that scores earned under nonstandard time conditions do not have the same meaning as scores earned under standard time conditions; and the scores should therefore be interpreted with great sensitivity and flexibility. The letter also reminds score users that "civil rights statutes prohibit discrimination against persons with disabilities." The letter does not identify the candidate's disability, and no medical or related information is provided to schools, unless students request that LSAC share their accommodation request packet as part of their law school application submission.

LSAC's policy on reporting scores earned with extra time accommodations is set out on its website. *See* "Additional Considerations," *at* http://lsac.org/jd/lsat/accommodated-testing. When Ms. Bargeron registered for the LSAT, she agreed to be bound by LSAC's testing policies,

including its policy regarding the annotated reporting of extra-time accommodated scores.  *See* Ex. 1 hereto; *see also* "LSAC Policies," *available at* www.lsac.org/aboutlsac/policies.

## LEGAL AUTHORITY

1.      42 U.S.C. § 12189 is the section of the ADA applicable to the administration of standardized tests by private testing entities.   The implementing regulations are found at 28 C.F.R. § 36.309.  Neither the statute nor its implementing regulations prohibit annotating scores that are achieved with extra testing time.

2.      To the best of LSAC's knowledge, only one court case has been decided on the merits involving a challenge to the practice of "flagging" accommodated test scores. *See Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146 (3d Cir. 1999).  The U.S. Court of Appeals for the Third Circuit concluded in that case that the ADA does not contain a "statutory proscription against annotating the test scores of examinees who receive accommodations," *id.* at 156, and that the regulations implementing 42 U.S.C. § 12189 likewise do not "bar the practice of flagging the test scores of examinees who have received testing accommodations," *id.* at 155. The Third Circuit further noted that the "annotation simply indicates that Doe's scores are not psychometrically comparable to the scores of examinees who took the test without accommodations." *Id.* at 156.

3.      LSAC's score annotation policy is currently being challenged in a lawsuit pending in the U.S. District Court for the Northern District of California.   *See Dep't of Fair Employment & Housing v. LSAC*, 896 F. Supp. 2d 849 (N.D. Cal. 2012).  There has been no decision on the merits of that challenge, however.  The referenced court decision resulted from a motion to dismiss by LSAC.  Accepting the plaintiff's allegations as true, as it was required to do in deciding a motion to dismiss, the court held that it could not dismiss the plaintiff's flagging

claim as a matter of law.  In so holding, the court noted an earlier non-merits decision from the same California court involving a challenge to score flagging.  *See Breimhorst v. Educational Testing Serv.*, No. 99-CV-2287, 2000 WL 34510621 (N.D. Cal. Mar. 27, 2000) (unpublished) (denying motion for judgment on the pleadings).

4.    In *Mallett v. Marquette Univ.*, No. 94-3246, 1995 U.S. App. LEXIS 24324 (7th Cir. Aug. 24, 1995) (unpublished), the Seventh Circuit addressed the plaintiff's argument that the LSAT has a "disproportionate" and "adverse" effect on disabled persons, based on LSAC's score annotation policy. *Id.* at *5-6.  The court found no such discrimination. *See id.* at *5-8.

5.    The Office of Civil Rights in the United States Department of Education has investigated a handful of claims that law schools discriminated against individuals with annotated LSAT scores.  The claims were not based on any alleged violations of the ADA, but rather, on the Rehabilitation Act's prohibition on pre-admission inquiries regarding an applicant's disability status.  To the best of LSAC's knowledge, all such investigations resulted in findings that individuals with annotated LSAT scores were <u>not</u> discriminated against in the law school admissions process:

a.    Case No. 01-93-2050, U.S. Dep't of Education, Office for Civil Rights, Region I (July 30, 1993), *available at* 1993 NDLR (LRP) LEXIS 1200, at *12-13 (Ex. 2): "OCR found that the Complainant and his treatment specialist requested, and he was granted, accommodations to take the LSAT under nonstandard conditions.   OCR's investigation established that the Law School recognized that the Complainant took the LSAT under nonstandard conditions.  OCR found that the Law School considered other information with respect to the Complainant's admission file, and that it was the lack of evidence of the Complainant's likely success in law school which was the basis for his denial of admission."

b.      Case No. 03-93-2038, U.S. Dep't of Education, Office for Civil Rights, Region III (July 28, 1993), *available at* 1993 NDLR (LRP) LEXIS 1341, at *13-14 (Ex. 3): "OCR's investigation revealed that four applicants with learning disabilities were offered admission for the fall 1992 entering class.  The School of Law was aware of such learning disabilities at the time they applied.  Each of these applicants took nonstandard or accommodated LSATs."

c.      Case No. 04-91-2124, U.S. Dep't of Education, Office for Civil Rights, Region VII (April 2, 1993), *available at* 1993 NDLR (LRP) LEXIS 1050, at *16 (Ex. 4): "There was no evidence that the complainant was rejected for admission [to law school] based on the fact that he took the LSAT under nonstandard conditions.  This is consistent with OCR's policy of allowing a postsecondary institution to use a test score indicating that the test was taken under nonstandard conditions, so long as the test score is not the only criterion used for admission, and the individual with a disability is not denied admission because he took the test under nonstandard conditions."

d.      Case No. 05-91-2083, U.S. Dep't of Education, Office for Civil Rights, Region V (Oct. 18, 1991), *available at* 1991 NDLR (LRP) LEXIS 1239, at *28 (Ex. 5): "OCR's investigation established that the Law School did not deny any applicant admission because he or she took the LSAT under non-standard conditions.  The evidence revealed that the Law School made no adjustments in the LSAT scores of these applicants to reflect the fact that they had taken the LSAT under non-standard conditions and that the Law School used these LSAT scores to compute the sorting index scores of these applicants in the same way that it computed the sorting index scores of other applicants.  The evidence further established that the Law School

reviewed the applicants who took the LSAT under non-standard conditions according to the same admissions procedures and criteria that it used for other applicants."

6.    A court-ordered restraint on LSAC's ability to inform law schools when test scores are earned with extra testing time would implicate First Amendment concerns.  First Amendment cases are therefore also relevant to plaintiff's request for an order prohibiting LSAC from sending out its standard score annotation letter.  As examples of cases that are relevant in this regard, LSAC refers the Court to the following:  *U.S. v. Alvarez*, 132 S. Ct. 2537, 2543 (2012); *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2665 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated."); *Ibanez v. Florida Dep't of Bus. & Prof. Reg.*, 512 U.S. 136, 142 (1994) ("Commercial speech that is not false, deceptive, or misleading can be restricted ... only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest.") (citation omitted).

This 17th day of December, 2013.

/s/ G. Grant Greenwood
G. Grant Greenwood
Georgia State Bar No. 309166

/s/ Lee M. Gillis, Jr.
LEE M. GILLIS, JR.
Georgia State Bar No. 217515
*Attorneys for Law School Admission Council, Inc.*

JAMES-BATES-BRANNAN-GROOVER-LLP
231 Riverside Drive
P.O. Box 4283
Macon, Georgia 31208-4283
(478) 742-4280

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing *LSAC'S Memorandum on the Annotation of Scores Earned with Extra-Time Accommodations* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Thomas F. Richardson
Georgia Bar No. 604325
Jason D. Lewis
Georgia Bar No. 197856
Chambless, Higdon, Richardson, Katz, & Griggs, LLP
3920 Arkwright Road, Suite 405
PO Box 18086
Macon, GA 31209-8086
*Attorneys for Plaintiff*

This the 17th day of December, 2013.

*/s/ G. Grant Greenwood*
G. Grant Greenwood
Georgia State Bar No. 309166
*Attorney for Defendant Law School Admission Council, Inc.*

JAMES-BATES-BRANNAN-GROOVER-LLP
231 Riverside Drive
Post Office Box 4283
Macon, Georgia 31208-4283
(478) 742-4280 – telephone